UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-14225-RGS

RICHARD HATFIELD

v.

MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY
and HERBY JEAN

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

December 9, 2015

STEARNS, D.J.

This case involves a confrontation between plaintiff Richard Hartfield and defendant Herby Jean, an MBTA police officer, at the Dudley Bus Terminal in Dudley Square in Roxbury, Massachusetts. The parties have cross-moved for partial summary judgment. The facts are taken from the allegations in the Amended Complaint, the parties' statements of undisputed facts, or where disputed, the plausible facts viewed in the light most favorable to the nonmoving party.

BACKGROUND

At around 8 a.m. on July 30, 2012, Hartfield was observed by Jean entering a Dunkin Donuts on the Terminal premises, leaving without making

a purchase, crossing the street, and then returning to the Dunkin Donuts a few minutes later. Thinking Hartfield's behavior suspicious,[1] Jean approached him and asked for his name. Hartfield demurred, asked Jean for his badge number, and accused him of not being "a real cop." (According to Hartfield, his more precise words were: "Why are you harassing me? You're not even a real cop." "You are going to lose your job." Pl.'s Mem. at 10-11). Jean then demanded identification. "Due to Jean's show of authority, Hartfield was intimidated into producing his identification . . . ." Am. Compl. ¶ 10.

After a warrant check proved negative, Jean issued Hartfield a verbal trespass notice. The notice ordered Hartfield to leave and stay away from the Terminal premises for 24 hours under threat of being arrested. Hartfield left briefly and stood on the other side of the adjacent Washington Street. He then returned to the Terminal to "make [the] point" that Jean had no authority to arrest him. Hartfield Dep. at 111, 125. Jean beckoned Hartfield to approach and placed him under arrest. Hartfield was booked at MBTA Police Headquarters and released later that day on bail. This lawsuit followed.

---

[1] Jean testified that he suspected possible drug dealing. Jean Aff. ¶ 11; Jean Dep. at 44.

Hartfield's Amended Complaint alleges civil rights violations under state law (Count 1); civil rights violations under federal law (Count 2); false arrest and false imprisonment under state law (first Count 3); common-law battery (second Count 3); negligence (Count 4); and intentional infliction of emotional distress (Count 5).  Federal question jurisdiction was invoked by defendants in removing Hartfield's Amended Complaint from the Suffolk Superior Court based on the allegations contained in Count 2.

DISCUSSION

It is useful to set out Hartfield's federal constitutional claims in the sequence in which they are plead in the Amended Complaint.  Hartfield first claims that Jean interfered with his First and Fourth Amendment right to frequent ("loiter in") a public accommodation (the Terminal) by stopping him and asking for identification.  Second, he complains that Jean violated his right to procedural due process by issuing the no-trespass warning without prior notice and the opportunity to be heard.  Third, he alleges that Jean issued the warning in retaliation for his exercise of First Amendment rights in questioning Jean's status and authority as a police officer.  Lastly, Hartfield alleges that Jean arrested him for criminal trespass without probable cause in violation of the Fourth Amendment.  None of the federal claims, to the extent that they are pled with sufficient clarity to be identified,

are viable.  *See Durand v. Harpold,* 2015 wl 8045241, at *2 (1st Cir. Dec. 7, 2015), quoting *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir. 1990) ("Judges are not expected to be mindreaders, . . . a litigant has an obligation to spell out [his] arguments squarely and distinctly or else forever hold its peace.").

As to claim 1 (the First and Fourth Amendment "right to loiter"), police officers "do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions."  *Florida v. Royer*, 460 U.S. 491, 497 (1983) (*plurality opinion*).  Police may also ask a person for identification without violating any constitutional right.  *Immigration and Naturalization Serv. v. Delgado*, 466 U.S. 210, 215-216 (1984).  While it is true that a person may (in most circumstances) walk away without complying with an officer's request, *but see Hiibel v. Sixth Jud. Dist. Ct. of Nevada*, 542 U.S. 177, 188-189 (2004), that is not the course Hartfield chose to take.  He elected rather to engage in a verbal confrontation with Jean by demeaning his status and authority as a police officer.

4

As to claim 2 (procedural due process), a State has no obligation to provide a predeprivation remedy for the unauthorized (for argument's sake) act of a State official like Jean where the State provides an adequate postdeprivation remedy for any resulting harm. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 539 (1981). "The commonsense teaching of *Parratt* is that some questions of property, contract, and tort law are best resolved by state legal systems without resort to the federal courts, even when a state actor is the alleged wrongdoer." *Albright v. Oliver*, 510 U.S. 266, 284 (1994) (Kennedy, J., *concurring*).

As to claim 3 (First Amendment right of free speech), "fighting words" and the hurling of insults are not categories of speech to which the protections of the First Amendment extend. *See Cantwell v. Connecticut*, 310 U.S. 296, 309-310 (1940) ("Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution . . . ."); s*ee also Chaplinsky v. New Hampshire*, 315 U.S. 568, 569 (1972) (same – accusing an officer of being a "damn Fascist" – is not protected speech under the Constitution.).

And finally, as to claim 4 (lack of probable cause), probable cause is assessed not by the subjective state of mind of the arresting officer or the subjective expectations of the person arrested. "When the constitutional

validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed." *Beck v. Ohio,* 379 U.S. 89, 96 (1964); s*ee also Holder v. Town of Sandown*, 585 F.3d 500, 504 (1st Cir. 2009).

The elements of criminal trespass under Mass. Gen. Laws ch. 266, § 120, are: (1) entering or remaining upon the property of another; (2) without right; and (3) after having been forbidden to do so by a direct warning or posted notice. *Commonwealth v. Strahan*, 30 Mass. App. Ct. 947, 948 (1991). The Massachusetts criminal trespass statute applies to public as well as private property. *Commonwealth v. Egleson*, 355 Mass. 259, 262 (1969); *see also Alexis v. McDonald's Rests. of Massachusetts, Inc.*, 67 F.3d 341, 350 (1st Cir. 1995) (noting that the Massachusetts trespass statute does not limit the power of the owner of property open to the public to summarily revoke a licensee's right to enter or remain on the premises). Here, no objective observer could find anything other than that the elements of criminal trespass are satisfied. It is undisputed that: (1) the Dudley Terminal is property of the MBTA; (2) Hartfield was given notice forbidding him from

remaining on or returning to the Terminal premises for 24 hours;[2] and (3) in disregard of that warning, Hartfield returned to the Terminal.

Despite the insinuation to the contrary, there is no doubt that Jean had the lawful authority to arrest Hartfield for trespass on MBTA property. In creating the MBTA Police, the Legislature in St. 1968, ch. 664, decreed that MBTA "'officers shall have, within the territorial limits of the [A]uthority, the powers and duties conferred or imposed upon police officers of cities and towns' under [Mass. Gen. Laws ch.] 41, § 98, and 'shall have the powers and duties which are conferred or imposed upon police officers of railroads, street railways and steamboats under [Mass. Gen. Laws ch.] 159, § 93.'" *Commonwealth v. Mottola*, 10 Mass. App. Ct. 775, 779-780 (1980).  Under Massachusetts law, a duly commissioned officer (as is Jean) may make a warrantless arrest on probable cause that a misdemeanor trespass is being committed in his presence (as was the case here).  *Alexis*, 67 F.3d at 349.

Finally, it is settled under Massachusetts law that the MBTA Police have the right to order persons off MBTA property, including transit stations and bus terminals, for good cause, even though the property is deemed a

---

[2] As Hartfield concedes, the MBTA warns the public on its website and elsewhere that "[a]ll MBTA property is considered private.  When a Transit Police Officer orders you to leave the property and issues you a verbal or written trespass notice, you must leave immediately.  If you return . . . you are subject to arrest . . . ."  Pl.'s Stmt. of Material Facts ¶ 58).

"public accommodation." *Gutierrez v. Mass. Bay Transp. Auth.*, 437 Mass. 396, 411 (2002). To the extent that Hartfield is alleging that Jean violated the state public accommodation law, Mass. Gen. Laws ch. 272, §§ 92A and 98,[3] that is not a matter with which the *federal* civil rights statute is concerned. *See Vargas-Badillo v. Diaz-Torres*, 114 F.3d 3, 6 (1st Cir. 1997); *see also Durand,* 2015 WL 8045241, at *1 (1st Cir. Dec. 7, 2015) ("[A] state law violation is not itself enough to render a seizure unreasonable for Fourth Amendment purposes.").

## ORDER

When, as here, at the incipient stages of litigation, a district court dismisses all foundational federal claims, the better course of discretion is to decline jurisdiction over any pendent state claims. *Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998). The court will follow that course here: Count 2 of the Amended Complaint ("Violation of Civil Rights under Federal Law") will be <u>DISMISSED</u>; the remaining state-law counts (Counts 1, 3 (first and second), 4, and 5) are <u>REMANDED</u> without opinion. The Clerk will return

---

[3] Section 98 of Chapter 272 provides liability for discrimination with respect to admission to a place of public accommodation based on, among other criteria, race. Both Jean and Hartfield are black. Other than some musings in Hartfield's pleadings about the "Black Lives Matter" movement, there is no evidence proffered that racial animus played any part in Jean's decision to arrest him.

8

the file, with a copy of this decision, to the Clerk of the Suffolk Superior Court.

                      SO ORDERED.

                      <u>Richard G. Stearns</u>
                      **UNITED STATES DISTRICT JUDGE**